IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RANDY YOUNG,

          Plaintiff,

v.          CIVIL ACTION NO. 2:23-cv-00764

WESTERN-SOUTHERN AGENCY, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Randy Young's ("Plaintiff") Motion to Remand, (ECF No. 9); and Defendants Western-Southern Agency, Inc., and Western-Southern Life Assurance Company's (collectively, "Defendants") Motion to Dismiss, (ECF No. 3). For the reasons discussed more fully below, the Court **DENIES** Plaintiff's Motion to Remand, (ECF No. 9). The Court also **DENIES** Defendants' Motion to Dismiss, (ECF No. 3), **WITHOUT PREJUDICE**.

          *I.*      *BACKGROUND*

Plaintiff worked as an employee for Defendants for nearly 13 years, until he was terminated from his position in 2019. (ECF No. 1-5.) While an employee, Plaintiff enrolled in Defendants' Long-Term Incentive Retention ("LTIR") Plan. (*Id.*) The plan included a "cliff vesting" program. (*Id.*) According to the Amended Complaint, the program is intended to incentivize top employees to stay with the company. (*Id.*) Under the "cliff vesting" program, units are granted to top employees, and those units become fully vested seven years after they are given, so long as the employee is still with the company. (*Id.*)

1

By April 2019, when Plaintiff was terminated, Plaintiff had 48 vested LTIR units, totaling $257,472. (*Id.*) Plaintiff had also acquired an additional 30 units, which were set to vest when Plaintiff turned 55-years-old. (*Id.*) Plaintiff alleges that because the 48 units were fully vested, they were considered taxable wages under IRS regulations, and as a result, he paid taxes on them. (*Id.*) These taxes were automatically deducted from Plaintiff's paycheck. (*Id.*)

Upon Plaintiff's termination, Plaintiff alleges that Defendants refused to pay him the 48 fully vested units of LTIR benefits. (*Id.*) Defendants asserted that because Plaintiff was involuntarily terminated, Plaintiff forfeited all of his benefits under the LTIR Plan. (*Id.*)

On March 31, 2021, Plaintiff filed his initial complaint in the Circuit Court of Kanawha County, West Virginia. (ECF No. 10 at 1; ECF No. 1-1.) The original complaint alleged tortious interference with business relations, intentional misrepresentation and fraud, and intentional infliction of emotional distress. (ECF No. 1-1.) After Defendants filed a Motion to Dismiss that original complaint, Plaintiff filed a Petition for Arbitration. (*Id.* at 1.) At arbitration, Plaintiff sought a pay-out of a portion of his LTIR benefits. (*Id.* at 1–2.) The arbitration concluded in the arbitrator issuing an interim award, holding in part that Plaintiff's claim for LTIR benefits was "beyond the scope of the Arbitration Agreement." (*Id.*)

As a result, Plaintiff amended his original complaint to add a claim for his vested LTIR benefits. (*Id.* at 2; ECF No. 1-5.) The Amended Complaint initially contained three counts. Counts One and Two were dismissed, leaving only Count Three, which is a claim to recover Plaintiff's vested LTIR benefits under the West Virginia Wage and Payment Collection Act, W. Va. Code § 25-5-1. (ECF Nos. 1-4; 1-5.)

With only one count remaining, Defendants filed a Notice of Removal to remove the case to federal court based on federal question jurisdiction under 28 U.S.C. § 1331. Defendants assert

that Plaintiff's Amended Complaint is "completely preempted by section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).

On November 29, 2023, Defendants filed a Motion to Dismiss. (ECF No. 3.) Plaintiff timely responded on January 30, 2024, (ECF No. 17), and Defendants timely replied, (ECF No. 19). As such, this motion is fully briefed and ripe for adjudication.

Additionally, around the same time, on December 27, 2023, Plaintiff filed a Motion to Remand, (ECF No. 9), arguing that this Court lacks jurisdiction because Plaintiff's claim only involves the West Virginia Wage and Payment Collection Act, W. Va. Code § 21-5-1, (ECF No. 10). Defendants filed a response on January 9, 2024, (ECF No. 11), and Plaintiff timely replied, (ECF No. 12). Therefore, this motion is also fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

Congress has provided a right of removal from state to federal court if a case could have originally been brought in federal court. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." Generally, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). A corollary to the well-pleaded complaint rule arises in the context of complete preemption.

Under the jurisdictional doctrine of complete preemption, where "'Congress so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character,' the state law claims are converted into federal claims, which may be removed to federal court." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003) (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th

Cir. 2002)). When there is complete preemption, "'the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Sonoco Prods. Co.*, 388 F.3d at 371 (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425, No. 02-2139, slip op. at 5 (4th Cir. 2003)). Complete preemption differs from conflict preemption, which only creates a federal defense to a plaintiff's suit but does not provide removal jurisdiction. *Sonoco Prods. Co.*, 388 F.3d at 371.

In the ERISA context, the only state law claims that can properly be removed to federal court are the ones that are completely preempted by ERISA's civil enforcement provision, § 502(a).[1] *Id.* (citing *Darcangelo*, 292 F.3d at 187). As relevant here, "[h]ow a plaintiff denominates his claim does not determine whether it is within the scope of § 502(a)." *Warren, Jr. v. Blue Cross and Blue Shield of S. Carolina*, No. 97-1374, 1997 WL 701413, at *2 (4th Cir. Nov. 12, 1997) (citing *Metro. Life*, 481 U.S. at 64 (action completely preempted although complaint "purported to raise only state law causes of action")).

Because federal courts are courts of limited jurisdiction, a defendant seeking to invoke federal jurisdiction through removal "carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Initially, this burden parallels a plaintiff's pleading burden and is not heavy. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). However, once a plaintiff challenges jurisdictional allegations, "[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper." *Id*. (alteration in original) (quoting *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)).

---

[1] Section 502(a) provides, in relevant part, that "[a] civil action may be brought . . . (1) by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

4

"When removal is challenged, the defendant must establish jurisdiction by a preponderance of the evidence." *S. v. Marion Cty. Coal Co.*, Civil Action No. 1:15CV171, 2015 WL 6964651, at *2 (N.D. W. Va. Nov. 10, 2015) (citing *Strawn*, 530 F.3d at 297–98).

In general, statutes providing for removal must be strictly construed "in light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits." *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 402 (S.D. W. Va. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). At the same time, however, "[t]he very fact that Congress has provided defendants with the right of removal indicates that the removal right 'is at least as important as the plaintiff's right to the forum of his choice,' and the statutory right to removal should not be 'easily overcome by tactical maneuvering by plaintiffs.'" *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 816–17 (E.D. Va. 2005) (quoting *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 927 (4th Cir. 1992)).

### III. DISCUSSION

The Court begins by addressing Plaintiff's Motion to Remand, (ECF No. 9). Plaintiff argues that this Court should remand this case because Plaintiff's claim is not completely preempted by ERISA. (ECF No. 10.) Before determining whether the LTIR Plan is completely preempted, the Court first must determine whether the LTIR Plan is an ERISA-governed plan, i.e., whether ERISA even applies here.

#### A. The LTIR Plan is an ERISA-Governed Plan

The threshold question is whether the LTIR Plan is governed by ERISA. While Plaintiff does not explicitly argue that the LTIR Plan is not an ERISA-governed plan, and in fact, sometimes

concedes that it is, (*see* ECF No. 12 at 2 (referring to Defendants' LTIR Plan as "Defendant's ERISA plan")), Plaintiff does contest whether ERISA governs this case. (ECF Nos. 10; 17.)

ERISA governs disputes that arise under an "employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry affecting interstate commerce." 29 U.S.C. § 1003(a)(1). An "employee benefit plan" means either an "employee welfare benefit plan" or an "employee pension benefit plan," or a plan which is a combination of both. § 1002(3). ERISA's definition of an "employee pension benefit plan" is intentionally broad, *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990), and ERISA is only implicated if the benefits involved are administered via a plan. *Donovan v. Branch Banking and Trust Co.*, 220 F.Supp.2d 560, 564 (S.D. W. Va. Sept. 11, 2002).

29 U.S.C. § 1002(2)(A)(ii), the applicable provision, states, in pertinent part:

> [t]he terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program . . . (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

A pension plan is deemed "established" under ERISA when a reasonable person can determine the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving the benefits. *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). *See also Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861 (4th Cir. 1994) (adopting the *Donovan* test).

The LTIR Plan meets all of the aforementioned requirements to be an "established" plan. First, the intended benefits are performance units that will become vested seven years after the award is granted to the account. (ECF No. 23 at 4–5.) Second, to be eligible to participate in the LTIR Plan, an employee must be in the top five percent of employees. (*Id.* at 4.) That employee

then becomes a LTIR Plan "participant," and the "participant" or their "beneficiaries" can claim a distribution. (*Id.* at 6.) By the terms of the LTIR Plan, a "beneficiary" means "the person or persons entitled to receive benefits under the Plan upon the death of a participant." (*Id.* at 2.) Third, a reasonable person reading the LTIR Plan can determine that the financing is sourced by the "Company," which is "The Western and Southern Life Insurance Company and any successor company." (*Id.* at 2–3.) The "Company" sets funds aside or earmarks funds to go into the LTIR Plan. (*Id.* at 3.) Lastly, the procedures for receiving benefits under the LTIR Plan are clear. Notwithstanding death and hardship withdrawals, if a "participant" "voluntarily terminates employment from the Company or any Affiliate . . . he will be entitled to a benefit." (*Id.* at 6.) The "participant" may elect how he would like his acquired vested units to be distributed. (*Id.* at 6–7.) Since all of the necessary elements are met, the LTIR Plan is "established" for ERISA purposes.

Having determined that the LTIR Plan is an "established" plan, the Court next considers whether the LTIR Plan is an "employee pension benefit plan." To begin, under ERISA's broad definition, Defendants are an "employer."[2] As an "employer," and by nature of their work of selling insurance, (ECF No. 1-5), Defendants are engaged in activity affecting interstate commerce. Therefore, any plan that is established by Defendants that defers compensation or provides retirement income, will necessarily qualify as an ERISA-governed "employee pension benefit plan." *Guiragoss v. Khoury*, 444 F.Supp.2d 649, 655–56 (E.D. Va. 2006). The LTIR Plan does just that. Under the terms of the LTIR Plan, employees in the top five percent can receive money that is set aside into units that will vest. (ECF No. 23.) When it comes to distribution of the vested funds, the default is that individuals will receive those funds when they voluntarily

---

[2] 29 U.S.C. § 1002(5) ("The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . .").

separate from the company, including retirement. (*Id.*) Therefore, the deferral of the earned income extends to "the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii). While it does appear that by the terms of the LTIR Plan employees can elect to receive in-service distributions, (ECF No. 23), the automatic default is that the payments are deferred to the "termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii). *See Wilson v. Safelite Group, Inc.*, 930 F.3d 429, 436 (6th Cir. 2019) (holding a plan to be an ERISA employee pension benefit plan, and not a bonus plan when by default, payments were deferred to the termination of an employee); *Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1377 (9th Cir. 1994) ("Because ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan . . . .").

The only other argument Plaintiff seemingly makes as to why ERISA does not apply here, is that the LTIR Plan is not a "top hat" plan, as Defendants allege. (ECF No. 12.) A "top hat" plan is an unfunded employee benefit plan "'maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.'" *Bond v. Marriott Intern, Inc.*, 637 Fed.Appx. 726, 729 (4th Cir. 2016) (quoting 29 U.S.C. § 1051(2)). "Top hat" plans are a sub-set of ERISA plans that are exempt from most of ERISA's substantive requirements,[3] but are still subject to the enforcement provision, which is what is at issue at this stage in the litigation. *Denzler v. Questech, Inc.*, 8- F.3d 97, 99 n. 1 (4th Cir. 1996); *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007). The question of whether the LTIR Plan is a "top hat" plan is premature at this stage. *See Davis v. Old Dominion Tobacco Co. Inc.*, 688 F.Supp.2d 466, 470 n. 6 (E.D. Va. Feb. 26, 2010) (explaining that whether the plan

---

[3] The requirements include detailed accrual, funding, vesting, and fiduciary regulations. *Denzler*, 80 F.3d at 99 n. 1.

8

constituted a "top hat" plan was premature for the motion to remand stage because at that point, the court only needed to determine the source of financing for the plan, not whether the plan is funded or unfunded); *Guiragoss*, 444 F.Supp.2d 649 (determining that the pension benefits agreement was a plan governed by ERISA before analyzing whether the plan was a "top hat" plan). However, regardless of whether the LTIR Plan is a "top hat" plan or not, for jurisdictional purposes, it is still an ERISA-governed "employee benefit plan." Aside from the "top hat" plan argument, Plaintiff does not argue that the LTIR Plan is exempt from ERISA in any other way.

### B. The LTIR Plan is Completely Preempted by ERISA

Since the LTIR Plan is governed by ERISA, the next question is whether Plaintiff's state law claim is completely preempted. There are three essential requirements for complete preemption:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must 'fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a)'; and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan.

*Prince v. Sears Holding Corp.*, 848 F.3d 173, 177 (4th Cir. 2017) (quoting *Sonoco Prods. Co.*, 388 F.3d at 372) (alterations in original) (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)). As an initial note, "[g]enerally, when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." *Gresham v. Lubermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005).

The first requirement for complete preemption is that Plaintiff has standing to assert his claim under § 502(a). § 502(a)(1)(B) is the part of § 502(a) that, according to Defendants, applies to Plaintiff's claim. Under that provision, the only parties entitled to pursue an ERISA claim are "participants" or "beneficiaries." 29 U.S.C. § 1132(a)(1)(B). Under the terms of the LTIR Plan,

9

a "participant" is "any Employee, who participates in the Plan in accordance with Article II thereof." (ECF No. 23 at 3.) It is uncontested that Plaintiff is a "participant" under the plan. (ECF Nos. 1-5; 11 at 2.) Therefore, Plaintiff has standing under § 502(a).

Turning to the second requirement, Plaintiff's claim must "'fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a).'" *Prince*, 848 F.3d at 177 (quoting *Sonoco Prods. Co.*, 338 F.3d at 372) (alterations in original)). Plaintiff's claim for recovery of benefits clearly falls within the scope of ERISA's enforcement provision. Plaintiff is seeking to recover benefits allegedly owed to him based on the coverage documents in dispute. *See* 29 U.S.C. § 1132(a)(1)(B) (providing that a civil enforcement action under ERISA may be brought, for among other reasons, "to recover benefits due to him under the terms of his plan").

Lastly, Plaintiff also meets the final requirement for complete preemption. Plaintiff's claim is not capable of resolution without interpreting the ERISA-governed employee benefit plan. *Prince*, 848 F.3d at 177 (quoting *Sonoco Prods. Co.*, 338 F.3d at 372) (alterations in original)). It is clear that Plaintiff's eligibility to receive his vested benefits turns on interpretation and analysis of the terms provided in the LTIR Plan. Indeed, Plaintiff is seeking benefits allegedly due to him under the LTIR Plan. *See Warren, Jr.*, 1997 WL 701413; *Radcliff v. El Paso Corp.*, 377 F.Supp.2d 558 (S.D. W. Va. 2005) (finding complete preemption under ERISA when the plaintiff brought claims that arose solely from his rights created by an ERISA benefit plan).

Since Plaintiff's state law claim is completely preempted by ERISA,[4] the "complete

---

[4] In Plaintiff's Memorandum to his Motion to Remand, (ECF No. 10), he makes arguments regarding exhaustion of remedies and futility. (*Id.* at 4–7.) Specifically, Plaintiff argues that he should not be "required to exhaust his remedies under ERISA" because doing so would be futile. (*Id.* at 6.) While "'ERISA does not contain an explicit exhaustion provision,' 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.'" *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 241 (4th Cir. 2022) (quoting *Makar v. Health Care Corp. of Mid-Atlantic (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989)). A plaintiff's failure to exhaust internal remedies may be excused when a plaintiff can show that pursuing those remedies would be "'futile.'" *Wilson*, 27 F.4th at 241 (quoting *Makar*, 872 F.2d at 83). At this stage, Plaintiff's argument is premature, and it is better reserved for the motion to dismiss or

10

preemption 'transforms the plaintiff's state-law claims into federal claims,' meaning that, effectively, there's 'no such thing as the state action'" any longer. *Skidmore v. Norfolk Southern Rys. Co.*, 1 F.4th 206, 218 (4th Cir. 2021) (quoting *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005) (cleaned up)). Now, the Court must move forward with only the federal claim. However, in the Fourth Circuit, rather than a court converting a plaintiff's state-law claim into a federal claim, a court may permit a plaintiff to amend its complaint and pursue relief under § 502(a). *Skidmore*, 1 F.4th at 218. *See Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003).

In this case, the Court finds that the proper course of action is to allow Plaintiff leave to amend his Amended Complaint to fit within the scope of § 502(a). Additionally, the Court denies Defendants' pending Motion to Dismiss, (ECF No. 3), without prejudice.

### IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 9.) The Court also **DENIES** Defendants' Motion to Dismiss **WITHOUT PREJUDICE**. (ECF No. 3.) And, the Court grants Plaintiff leave to amend his complaint within 21 days of the entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

---

summary judgment stage. *See Mixer v. M.K.-Ferguson Co.*, 17 F.Supp.2d 569, 577 (S.D. W. Va. 1998) (noting that defendants could assert a plaintiff's alleged failure to exhaust internal remedies as a defense to the plaintiff's claim).

ENTER: September 19, 2024

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE