**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**RANDY YOUNG,**

**Plaintiff,**

**v.**

**Civil Action No. 2:23-cv-00764**
**Honorable Thomas E. Johnston**

**WESTERN-SOUTHERN AGENCY, INC. a/k/a WESTERN & SOUTHERN FINANCIAL GROUP, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY a/k/a WESTERN & SOUTHERN LIFE INSURANCE COMPANY,**

**Defendants.**

**SECOND AMENDED COMPLAINT**

**COMES NOW**, Plaintiff RANDY YOUNG (hereinafter "Plaintiff"), by and through counsel, Charles R. Bailey and Bailey & Wyant, PLLC, and for his Second Amended Complaint against Defendants WESTERN-SOUTHERN AGENCY, INC. aka WESTERN & SOUTHERN FINANCIAL GROUP, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY aka WESTERN & SOUTHERN LIFE INSURANCE COMPANY, pursuant to this Court's Order, states as follows:

**PARTIES**

1. Plaintiff Randy Young was, at all times relevant herein, a citizen and resident of Elkview, Kanawha County, West Virginia.
2. Defendant Western-Southern Agency, Inc. aka Western & Southern Financial Group is an Ohio corporation, authorized to conduct business in West Virginia and was conducting business in Kanawha County, West Virginia at all times relevant herein.

3. Defendant Western-Southern Life Assurance Company aka Western & Southern Life Insurance is a subsidiary of Western-Southern Agency, Inc., authorized to conduct business in West Virginia and was conducting business in Kanawha County, West Virginia at all times relevant herein.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1331 and 28 U.S. Code § 1332 because Plaintiff's claims arise directly out of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") and because the parties are diverse and the value of Plaintiff's claims well exceed $75,000. This Court also has jurisdiction over this action pursuant to ERISA § 502(a) & (e), 29 U.S.C. § 1132(a) & (e).

5. This Court has personal jurisdiction over Defendants because Defendants transacts business in and have significant contacts with this District and because ERISA allows for nationwide service of process. See ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

6. Venue is proper pursuant to 28 U.S. Code § 1391(b)(2) because Plaintiff accumulated and accrued his LTIR units in controversy in this district. Venue is also proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**FACTUAL BACKGROUND**

7. Plaintiff worked for Defendants Western-Southern Agency, Inc. aka Western & Southern Financial Group and Western-Southern Life Assurance Company aka Western & Southern Life Insurance (hereinafter collectively referred to as "Western & Southern") for nearly 13 years, from June 2006 through until April 1, 2019.

8. Plaintiff fell subject to Western & Southern's long-term incentive retention ("LTIR") plan, which provides "cliff-vesting" of units to an associate after they have been with the company

for seven (7) years. The "cliff-vesting" program is designed to incentivize top associates to remain with Western & Southern rather than seek employment with competing firms. The units granted to an associate become 100% vested seven (7) years after they are awarded provided that the associate is still employed by the company.

9. By April 2019, Plaintiff had vested 48 units of LTIR benefits which calculate to be $257,472.

10. Plaintiff had also accumulated and accrued 30 additional units of LTIR benefits which calculate to be $160,920.00 and were set to vest when Plaintiff turned 55-years-old.

11. Because the 48 units of LTIR benefits were fully vested, these benefits were considered taxable wages under IRS regulations.

12. Plaintiff was required to pay taxes on the vested 48 units of LTIR benefits.

13. Taxes on the vested 48 units of LTIR benefits were automatically deducted from Plaintiff's paychecks for him.

14. On Monday, April 1, 2019, Western & Southern President, Troy Brodie invited Plaintiff to the home office in Cincinnati to discuss Plaintiff's concerns regarding the company's new compensation plan initiated in the first quarter of 2019.

15. Soon after arriving for the meeting with Mr. Brodie, Plaintiff was terminated from his employment.

16. On Thursday, April 4, 2019, while gathering his belongings, Plaintiff was pulled aside by Western & Southern Divisional Vice President Josh Swogger who informed Plaintiff that Western & Southern had authorized him to offer Plaintiff a portion of the commissions and LTIR benefits owed to him on the condition that Plaintiff voluntary surrender his insurance license.

17. When Plaintiff asked Josh Swogger why Western & Southern would authorize him to offer such a deal, Josh Swogger explained that Western & Southern would prefer to pay out Plaintiff's benefits rather than have him as a competitor in the field.

18. Plaintiff refused the deal and Josh Swogger threatened Plaintiff that Western & Southern would do everything it could to drive Plaintiff out of the insurance business.

19. Upon termination, Western & Southern refused to pay Plaintiff his final paycheck in the amount of $45,082.39.

20. Western & Southern refused to pay Plaintiff the 48 units of LTIR benefits which had fully vested by the time of his termination.

21. Western & Southern also refused to pay Plaintiff the 30 units of accrued LTIR benefits which would have vested a little over a year after Plaintiff's termination.

22. Western & Southern notified Plaintiff that all benefits were automatically forfeited upon involuntary termination under the company's LTIR plan.

23. In addition to other claims, Plaintiff brought a claim against Western & Southern for wages owed to him under West Virginia's Wage and Payment Collection Act ("WPCA"), W. Va. Code § 21-5-1, *et seq.* through arbitration before the American Arbitration Association pursuant to the company's dispute resolution program.

24. Plaintiff succeeded on his WPCA claim for unpaid wages, and by interim award entered on February 14, 2022, was awarded $45,082.39 in unpaid wages plus two (2) times that unpaid amount in liquidated damages for a total award of $135,247.17.

25. Plaintiff also pursued a West Virginia Wage and Payment Collection Act ("WPCA") claim against Western & Southern through arbitration for the LTIR benefits owed to him.

26. Western & Southern argued that per the arbitration clause contained in Western & Southern Agency Group Field Dispute Resolution Program booklet, "any claims under the Company's Beneflex, Pension or 401K Plan, or any other employee benefit plan" are not subject to arbitration.

27. Western & Southern argued "LTIR benefits are for the courts, not arbitration."

28. By arbitration interim award entered on February 14, 2022, the arbitrator ruled that "any claim regarding the LTIR benefits is not within the scope of this arbitration", thereby declining to rule on Plaintiff's claim under the WPCA for LTIR benefits.

29. The arbitrator ruled that way even though the plaintiff was permitted to introduce evidence of and litigated his claim for LTIR benefits before the arbitrator.

30. The arbitrator's decision that he lacked jurisdiction over the dispute came as a surprise to Plaintiff having litigated the issue before the arbitrator and provided memoranda of law to him on the issue.

31. Plaintiff brings the following claims against Defendants due to the arbitrator refusing the rule on the issues of the LTIR benefits.

32. Plaintiff maintains that the exhaustion of any internal administrative remedies of the defendant regarding the denial of his LTIR benefits would have been futile.

33. According to Western and Southern policies, an employee who is discharged is not entitled to vested LTIR benefits or LTIR benefits that have accrued but not yet vested.

34. Both the vested LTIR benefits and those accrued but not yet vested could not be forfeited under the law as pled below.

**<u>COUNT I –</u>**
**<u>CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B)</u>**

35. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth within.

36. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

37. Plaintiff was subject to Western & Southern's long-term incentive retention ("LTIR") plan, which provides "cliff-vesting" of units to an associate after they have been with the company for seven (7) years. The "cliff-vesting" program is designed to incentivize top associates to remain with Western & Southern rather than seek employment with competing firms. The units granted to an associate become 100% vested seven (7) years after they are awarded provided that the associate is still employed by the company.

38. By April 2019, Plaintiff had vested 48 LTIR units which calculate to be $257,472.

39. Because the 48 units of LTIR benefits were fully vested, these benefits were considered taxable wages under IRS regulations.

40. Plaintiff was required to pay taxes on the vested 48 units of LTIR benefits.

41. Taxes on LTIR benefits were automatically deducted from Plaintiff's paychecks for him.

42. Western & Southern refused to pay Plaintiff the 48 units of LTIR benefits which had fully vested by the time of his termination.

43. ERISA defines the term "vested liabilities" as "the value of the immediate or deferred benefits available at normal retirement age for participants and their beneficiaries which are **non-forfeitable**. 29 U.S.C. § 1002(25) (emphasis added).

44. The Fourth Circuit has commented on the same stating, "As the Sixth Circuit has succinctly put it, '[t]o vest benefits is to render them forever unalterable.'" *Bellon v. PPG Emp. Life & Other Bens. Plan*, 41 F.4th 244, 252 (4th Cir. 2022) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998)).

45. Plaintiff is entitled to the payment of the 48 fully vested units of LTIR benefits which he paid taxes on.

**COUNT II –**
**CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA § 502(A)(3)**

46. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth within.

47. ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

48. To the extent that relief is unavailable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) or the remedy under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) is inadequate, at a minimum, Plaintiffs are permitted under Rule 8 to plead a claim under 502(a)(3), 29 U.S.C. § 1132(a)(3).

49. The Fourth Circuit has stated that monetary relief awarded to compensate for a Plaintiff's loss under an unjust-enrichment theory may qualify as "equitable relief" within the context of ERISA 502(a)(3). *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 505 (4th Cir. 2023).

50. Plaintiff was subject to Western & Southern's long-term incentive retention ("LTIR") plan, which provides "cliff-vesting" of units to an associate after they have been with the company

for seven (7) years. The "cliff-vesting" program is designed to incentivize top associates to remain with Western & Southern rather than seek employment with competing firms. The units granted to an associate become 100% vested seven (7) years after they are awarded provided that the associate is still employed by the company.

51. By April 2019, Plaintiff had vested 48 LTIR units which calculate to be $257,472.

52. Plaintiff had also accumulated and accrued 30 additional units which calculate to be $160,920.00 which were set to vest when Plaintiff turned 55-years-old, very shortly after Plaintiff was terminated.

53. Because the 48 units of LTIR benefits were fully vested, these benefits were considered taxable wages under IRS regulations.

54. Plaintiff was required to pay taxes on the vested 48 units of LTIR benefits.

55. Taxes on LTIR benefits were automatically deducted from Plaintiff's paychecks for him.

56. Western & Southern refused to pay Plaintiff the 48 units of LTIR benefits which had fully vested by the time of his termination.

57. Western & Southern refused to pay Plaintiff the 30 additional units of LTIR benefits which accrued and would have fully vested very shortly after Plaintiff's termination.

58. The "cliff-vesting" program at issue is designed to incentivize top associates to remain with Western & Southern rather than seek employment with competing firms.

59. Plaintiff did not seek employment with competing firms during his employment with Western & Southern, thereby conferring the benefit of continued employment on Western & Southern.

60. Plaintiff's continued employment resulting in the accumulation and accruement of 48 vested units of LTIR benefits and the accumulation and accruement of 30 additional units of LTIR benefits are a testament to the benefit conferred upon Western & Southern.

61. It would be inequitable for Western & Southern to have retained Plaintiff's continued employment without payment on the incentive by which Plaintiff continued that employment.

62. It would be inequitable to allow Western & Southern to promise payment in the form of LTIR benefits to Plaintiff to gain or continue Plaintiff's employment if they are allowed to terminate Plaintiff without ever having to pay any portion of those promised benefits.

63. Regarding Plaintiff's 30 additional units of LTIR benefits which were accrued and set to vest, it would be inequitable to allow Western & Southern to terminate Plaintiff just before the benefits' "vesting" to absolve themselves of any obligation to pay Plaintiff.

64. Plaintiff is entitled to the payment of the 48 fully vested units of LTIR benefits and to the 30 additional accrued units of LTIR benefits which would have fully vested very shortly after Plaintiff's termination.

**DAMAGES**

**WHEREFORE**, for reasons set forth in this Complaint, and for such other and further reasons as are apparent to this Honorable Court, Plaintiff respectfully requests judgment in favor of the Plaintiff and against the Defendants and requests that the Court award damages including, but not limited to all damages including but not limited to:

a. Damages for Plaintiff's 48 vested units of LTIR benefits which calculate to be $257,472;

b. Damages for Plaintiff's 30 accumulated and accrued units of LTIR benefits which were set to vest and calculate to be $160,920.00;

c. Attorneys' fee, costs, and expenses;

d. Pre and post judgment interest as provided by law;

e. All other remedies afforded under Federal law.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**RANDY YOUNG,**
**By Counsel**

**___/s/ Charles R. Bailey___________**
**Charles R. Bailey (WV Bar #0202)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
cbailey@baileywyant.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**RANDY YOUNG,**

**Plaintiff,**

**v.**

**Civil Action No. 2:23-cv-00764**
**Honorable Thomas E. Johnston**

**WESTERN-SOUTHERN AGENCY, INC. a/k/a WESTERN & SOUTHERN FINANCIAL GROUP, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY a/k/a WESTERN & SOUTHERN LIFE INSURANCE COMPANY,**

**Defendants.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing Second Amended Complaint was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, October 21, 2024:

Joseph M. Ward
Frost Brown Todd LLC
500 Virginia St. E, Ste 1100
Charleston, WV 25301-3204
Email Address: jward@fbtlaw.com
Attorney For: Western-Southern Agency, Inc.

**__ _/s/ Charles R. Bailey___________**
**Charles R. Bailey (WV Bar #0202)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
**cbailey@baileywyant.com**